## Commonwealth v. Bream

*Oscar F. Spicer, District Attorney,* for Commonwealth.
*Walton V. Davis,* for defendant.

MacPHAIL, *P. J.,* December 18, 1975 — This is a summary appeal from defendant's conviction of violating section 1018(a) of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 PS §1018.

There is little, if any, conflict in the evidence. The arresting officer said he was following two vehicles which, in turn, were following a school bus. The bus driver had switched on the amber lights in the bus and had come to a stop. A vehicle approaching from the opposite direction passed the bus. The bus driver said he saw defendant approaching and because of the proximity of the car to the bus he did not put on his red flashers. Defendant admitted that the school bus was stopped when he passed it, but said that since the red flashers were not on, he did not stop.

There are two provisions of section 1018 which must be considered. Subsection (a) requires operators of motor vehicles to stop not less than 10 feet from a school bus "conforming to the requirements of this act, which is being used for the transportation of children and which has stopped for the purpose of receiving or discharging one or more school children." Subsection (d.1) provides that when a school bus is stopped or parked for the purpose of receiving or discharging school children,

". . . the driver of the school bus shall operate the alternately flashing red signal lamps from the time the school bus has stopped until every child has reached a place of safety . . ." The school bus in question was equipped with both amber and red signal lamps.

Defendant contends that he is not required to stop until the red flashers on the school bus are operated. The Commonwealth insists that if the bus is stopped, other motor vehicles must also stop whether or not the red flashers are employed. We can find no precedent for our decision in this matter, although the author of an article in the Pennsylvania Bar Quarterly entitled, Pennsylvania's Obsolete Traffic Laws, 44 Pa. Bar Quarterly 561, 1973, concludes that Pennsylvania apparently requires drivers to stop even though alternately flashing red lights are not in use.

Interestingly, the penalty clause of the statute provides that: "Any person violating any of the provisions of this section shall . . . pay a fine." Thus, in the case before us, the bus driver could have been prosecuted for parking for the purpose of discharging school children without operating the red signal lamps!

The legislative history of section 1018 shows that subsection (a) was first included with a revision of The Vehicle Code in April of 1959. It was not until July of 1965 that subsection (d.1) was added. In the interim, there had been other changes to section 1018 not affecting the matter before us. In the revision of April 29, 1959, section 840(b)(9) included a provision that school buses should have one rear and one front signal lamp showing a flashing red

light. Thus, it appears that although school buses were required to have the flashing red lamps since 1959, there was no requirement that the driver was required to use them when the school bus was receiving or discharging school children until 1965. When (d.1) was submitted to the Senate of Pennsylvania as S.B. 582, one of its sponsors (Senator Lane) remarked (after reciting the pertinent provisions of the proposed amendment), "That, of course, will show the traveling public that these schoolchildren are, of course, departing from the bus.": Senate Legislative Journal, page 311 (1965). Therefore, it seems apparent that the legislative purpose in adding this subsection was to alert unwary motorists that they must stop for the bus when it is receiving or discharging passengers. Traditionally, our traffic signal color code has been green for "go," yellow for "proceed with caution," and red for "stop."

We think there is sufficient ambiguity in this statute for us to employ the provisions of the Statutory Construction Act of May 28, 1937, P.L. 1019, as amended, 46 PS §§501, et seq. Section 51 of that Act, 46 PS §551, states that we are to construe each law by giving effect to *all* of its provisions. Moreover, we may ascertain the intent of the legislature by considering, inter alia, the necessity for the law, the object to be obtained and the consequences of a particular interpretation. In addition, we may presume that the legislature intended the entire statute to be effective, certain and reasonable: Sections 51 and 52 of the Statutory Construction Act, supra, 46 PS §§551 and 552.

Obviously, section 1018 of The Vehicle Code was enacted to give maximum protection to school chil-

dren boarding or leaving a school bus. Looking at subsection (a) alone, there would be no way for a motorist to determine whether a school bus was stopped for the purpose of receiving and discharging school children or for some other purpose. However, if subsection (d.1) is read in conjunction with subsection (a), it makes it incumbent upon the school bus driver to let motorists know that the bus has been stopped for the purpose of receiving or discharging school children by operating his red signal lamp, or, if he has no red signal lamps, then by flashing his two front and rear lamps simultaneously. The amber signal lamps are to be used *before* the bus stops to pick up or discharge passengers: Subsection (d.2).

In the case now before us, the school bus driver said he did not turn on his red lamps because he knew the oncoming car would not have a chance to stop. No children were boarding or leaving the bus. Under the circumstances of this case, we are satisfied that defendant was under no duty to stop. We think the bus driver used commendable good sense to avoid a violation by defendant without creating any hazard to the school children. While motorists must exercise caution at all times in the vicinity of school buses, they need not do more than the law requires. Since a motorist cannot know whether a school bus is stopped to discharge or receive school children unless or until the signals prescribed in subsection (d.1) are operated, we must find this defendant not guilty.

## ORDER

And now, December 18, 1975, the court finds defendant not guilty. Costs to be paid by the county.